IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| SALEEM EL-AMIN, ) | |
| ) | |
|       **Plaintiff,** ) | |
| v. ) | Civil Action No. 1:18-00282 |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
|       **Defendants.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On February 9, 2018, Plaintiff filed his Application to Proceed Without Prepayment of Fees or Costs and a Complaint claiming entitlement to relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*[1] (Document Nos. 1 and 3.) Plaintiff names the United States as the sole Defendant. (Document No. 3.) In his Complaint, Plaintiff alleges that the United States, by its agency FCI McDowell, violated his right to privacy on or about November 2017. (Id., p. 1.) Plaintiff states that an employee of FCI McDowell improperly opened Plaintiff's legal mail, which was marked "SPECIAL MAIL – open only in the presence of inmate." (Id., pp. 1 – 2.) Citing Parks v. Internal Revenue Service, 618 F.2d 677, 683 (10th Cir. 1980), Plaintiff states that the foregoing conduct caused him to "come within the zone and danger of mental and emotional distress." (Id., p. 3.) As relief, Plaintiff requests monetary damages in the amount of $10,000. (Id.) As an Exhibit, Plaintiff attaches a copy of an opened envelope from the Clerk of the United States Court of Appeals marked "SPECIAL MAIL -- Open only in the presence of inmate." (Id., p. 5.)

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Also on February 9, 2018, Plaintiff filed a document entitled "Waiver of PLRA Fees." (Document No. 2.) In this document, Plaintiff appears to argue that he has the right to waive the application of the PLRA based on the "plain language of the acquired rights in the Black's Law Dictionary." (Id.)

On February 22, 2018, Plaintiff filed his Motion to Amend Complaint with his proposed Amended Complaint and his Brief in Support. (Document Nos. 5 and 6.) In his Amended Complaint, Plaintiff adds Warden Barbara Rickard was a defendant. (Document Nos. 5 and 13, p. 1.) Plaintiff continues to allege that an employee of FCI McDowell violated his right to privacy and put him in "the zone and danger for mental distress when he/she opened [Plaintiff's] legal mail from the District Court opened out of [his] presence marked - - 'SPECIAL MAIL – open only in presence of inmate.'" (Id., p. 1.) Plaintiff again cites Parks v. Internal Revenue Service, 618 F.2d 677, 683 (10th Cir. 1980)[2] in support of his claim. (Id., pp. 2 – 3.) As relief, Plaintiff requests monetary damages in the amount of $10,000 from the FCI McDowell employee who opened Plaintiff's legal mail and $200,000 from Warden Rickards. (Id.) Petitioner attaches his "Chief Declaration" and "Judicial Notice" stating that "pursuant to C.F.R. 540.18(a), the Warden must open legal mail marked – SPECIAL MAIL - - in presence of the inmate." (Document Nos. 7 and 8.)

On February 28, 2018, Plaintiff filed his "Motion to Amend Waiver of PLRA" and his Amended "Waiver of PLRA." (Document Nos. 10, 11, 14.) Plaintiff requests permission to amend

---

[2] *Parks* involved an allegation of a violation of the Privacy Act, 5 U.S.C. § 552a. Under the Privacy Act, a federal agency such as the BOP, is required to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 522a(e)(5). In the instant case, there is no allegation that an agency improperly disclosed records concerning Plaintiff.

his Waiver to "correct error in acquired rights doctrine definition." (Document No. 10.) Plaintiff states that the "definition of acquired rights doctrine in Black's Law Dictionary (10th Ed.) is the principle that once a right is vested, it can't be reduced by legislation." (Id.) Plaintiff states that the acquired rights doctrine grants him the "right to the Bill of Rights, Sec. 1, petition government and it can't be reduced by legislation of 42 U.S.C. 1997e or PLRA." (Id.) Thus, Plaintiff claims that he should not be required to exhaust his administrative remedies prior to filing suit. (Id.)

By separate Order entered this day, the undersigned has granted Plaintiff's Motion to Amend Complaint and Motion to Correct Waiver of PLRA. (Document No. 12.)

## **THE STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a person seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of

applicable law.

## DISCUSSION

**1.     Federal Tort Claim Act:**

In his Complaints and Brief in Support, Plaintiff states that this Court has jurisdiction over his claim pursuant to 28 U.S.C. § 1346(b). (Document Nos. 3, 13, 6.) Plaintiff claims that an employee of FCI McDowell "negligently" violated the prison's regulations (28 C.F.R. § 540.18)[2] by opening Plaintiff's legal mail outside of Plaintiff's presence. (Id.) Plaintiff alleges that the employee's action resulted in an invasion of Plaintiff's right to privacy. (Id.) Thus, Plaintiff appears to assert a negligence and invasion of privacy claim under the FTCA against Defendants. Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

---

[2] Title 28 C.F.R. § 540.2(c) provides that Special Mail includes correspondence from U.S. Courts and such incoming correspondences should be process under the special mail procedures as set forth in Sections 540.18 and 540.19. Section 540.18(a) provides as follows:
> The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosure as special mail. The correspondence may not be read or copies if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail – Open only in the presence of the inmate.

4

The FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), however, requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es]

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

5

judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a

Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether

7

an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

As stated above, the FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[4] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993); Gibbs v. United States, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency.[5]

---

[4] Title 28 U.S.C. § 2675(a) provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

[5] The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an

See Plyer v. United States, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision.

In his Complaints and Brief in Support, Plaintiff acknowledges that he did not fully exhaust his administrative remedies. (Document No. 3, 13, and 6.) Additionally, Plaintiff files a "Waiver of PLRA" and amended "Waiver of PLRA" again acknowledging that he did not exhaust his administrative remedies. (Document Nos. 2 and 14.) In his "Waivers," Plaintiff argues that he has an "acquired right" and he is not required to exhaust his administrative remedies. (Id.) Plaintiff appears to assert that his "acquired right" is root in the First Amendment's Petition Clause, which guarantees individuals the right "to petition the Government for a redress of grievances." U.S. Const. amend I. Thus, Plaintiff concludes that his First Amendment right to petition allows him to initiate the above action without exhausting his administrative remedies pursuant to the PLRA. Plaintiff's above argument, however, is without merit.

The PLRA merely requires an inmate to proceed through the administrative process in his pursuit for relief prior to initiating an action with the Court. The First Amendment petition right guarantees an individual the right "to petition the Government for redress of grievances," which is

---

action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. *Id.*, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, *Id.*, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. *Id.*, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

exactly what the administrative procedures allows. It is clearly established that when an inmate files a prison grievance, the inmate is exercising his or her First Amendment right to petition for redress of grievance. Booker v. South Carolina Department of Corrections, 855 F.3d 533, 544 (4th Cir. 2017)(inmates possess a right, grounded in the First Amendment's Petition Clause, to be free from retaliation in response to fling a prison grievance); Brodheim v. Cry, 584 F.3d 1262 (9th Cir. 2009)(recognizing an inmate's First Amendment petition right for filing grievances); Powers v. Snyder, 484 F.3d 929, 933 (7th Cir. 2007)(finding that "retaliation violates a prisoner's right, founded on the First Amendment, to petition government for the redress of grievances"); Boxer X v. Harris, 437 F.3d 1107 (11th Cir. 2006)(finding that an inmate's First Amendment petition right is violated when an inmate is punished for filing a grievance); Toolasprashad v. Bureau of Prisons, 286 F.3d 576 (D.C. Cir. 2002)(finding that inmates "undoubtedly" exercise their First Amendment petition right when filing grievances); Dixon v. Brown, 38 F.3d 379 (8th Cir. 1994)(finding that retaliation "strikes at the heart of an inmate's constitutional right to seek redress of grievances"). As explained above, the PLRA only requires that "available" administrative remedies be exhausted. Thus, to the extent administrative remedies are unavailable, an individual is excused from exhaustion and may petition the Court for relief by initiation an action. In the instant case, there is no indication or allegation that administrative remedies were rendered unavailable to Plaintiff. Plaintiff merely argues that the exhaustion requirement should be "waived" based upon the First Amendment right to petition. Based upon the foregoing, the undersigned finds that Plaintiff's First Amendment petition right does not excuse or "waive" the exhaustion requirement. Accordingly, the undersigned recommends that Plaintiff's FTCA claim be dismissed for failure to exhaust.

**2.    <u>Bivens</u> Claim:**

To the extent Plaintiff may be asserting a constitutional claim[6] under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the undersigned will consider the claim. For <u>Bivens</u> purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues

---

[6] In *Wolff v. McDonnell*, the United States Supreme Court determined there was limited protection under the First and Fourteenth Amendment for inmates' incoming legal mail. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Specifically, the Supreme Court stated as follows:
> While First Amendment rights of correspondents with prisoners may protect against the censoring of inmate mail, when not necessary to protect legitimate governmental interest, this Court has not yet recognized First Amendment rights of prisoners in this context. Furthermore, freedom from censorship is not equivalent to freedom from inspection or perusal . . . Finally, the Fourteenth Amendment due process claim based on access to the courts, has not been extended by this Court to apply further than protecting the ability of an inmate to prepare a petition or complaint. Moreover, even if one were to accept the argument that inspection or incoming mail from an attorney placed an obstacle to access to the court, it is far from clear that this burden is a substantial one. We need not decide, however, which, if any, of the asserted rights are operative here, for the question is whether, assuming some constitutional right is implicated, it is infringed by the procedure now found acceptable by the State.

*Id.* at 575-76. The Supreme Court then determined that the state's procedure that required incoming legal mail to be opened and inspected, but not read, in the presence of the inmate was acceptable, as long as the mail was specially marked as privileged and as originating from an attorney that had been previously identified to the prison as an attorney for that particular inmate. *Id.* at 576-77. The Supreme Court determined that the mail policy challenged in *Wolff* was "all, and perhaps even more, than the Constitution requires." *Id.* at 577.

11

or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., §

542.17(c).

As stated above, Plaintiff acknowledges in face of his Complaints, Brief in Support, and "Waiver of PLRA," that he did not exhaust his administrative remedies. (Document No. 2, 3, 6, 13 and 14.) Instead, Plaintiff argues that he has an "acquired right" petition the court for relief and he is not required to exhaust his administrative remedies. (Id.) For the same reasons set forth above, the undersigned rejects Plaintiff's argument and respectfully recommends that Plaintiff's Bivens claim be dismissed for failure to exhaust.[7]

---

[7] The undersigned further finds that Plaintiff's allegations fail to state a constitutional claim. Plaintiff does not challenge the constitutionality of 28 C.F.R. § 540.18. Plaintiff, however, argues a government employee violated his right to privacy by "negligently" failing to comply with 28 C.F.R 540.18. (Document No. 6, p. 5.) Prison officials' failure to follow their internal prison policies, however, are not actionable unless the alleged breach of the policy rises to a constitutional violation. *See Jackson v. Sampson*, 536 Fed.Appx. 356, 357 (4th Cir. 2013); *also see Myers v. Klevenhager*, 97 F.3d 91, 94 (5th Cir 1996); *Giovanni v. Lynn*, 48 F.3d 908, 913 (5th Cir. 1995), *cert. denied*, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). Case law indicates that no constitutional violation results from the negligent or inadvertent opening of legal mail outside the presence of an inmate where such was an isolated occurrence. *See Berger v. White*, 12 Fed.Appx. 768, 771 (10th Cir. 2001)(finding that "isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [inmate's] right to counsel or access to courts,' do not support a civil rights claim); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)(no constitutional violation where the inmate's legal mail was inadvertently opened and the inmate suffered no prejudice); *Lavado v. Keohane*, 992 F.2d 601, 610-11 (6th Cir. 1993)(finding the arbitrary or capricious opening of legal mail, or the "blatant disregard" for regulations concerning the handling of legal mail, results in a violation of the First Amendment); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989)(holding that the inadvertent opening of an inmate's legal mail constitutes mere negligence and does not rise to the level of a constitutional violation); *Short v. Shearin*, 2014 WL 3557236, * 8 (D.Md. July 17, 2014)(rejecting plaintiff's conclusory claim of a constitution violation from the opening of legal mail outside his presence on two occasions where there was no actual injury or specific harm); *Ferrell v. Lewis*, 2013 WL 12114471, * 1 - 2 (E.D.N.C. April 9, 2013)(finding inmate's claim that prison staff negligently opened his legal mail outside the presence of the inmate failed to state a constitutional claim); *Thomas v. Kramer*, 2010 WL 520610, * 3 (E.D.Cal. Feb. 9, 2010)("A mere claim of occasional error, delay, or negligent handling of mail, with no injury or prejudice to the prisoner, does not state a claim for a constitutional violation."); *Glenn v. Bracey*, 2006 WL 2796319 (D.S.C. Sept. 27, 2006)(finding no constitutional violation where there was no evidence that the legal mail was read or that the opening was anything but an "isolated negligent event"); *Lloyd v. Vincent*, 2004 WL 3249250 (D.S.C. Sept. 10, 2004)(finding that even assuming plaintiff's legal mail was opened outside his presence, plaintiff failed to raise a constitutional violation where there was no allegation or indication that the opening of the envelope denied him access to the courts or interfered with the ability to prosecute a case); *Bryant v. Winston*, 750 F.Supp. 733 (E.D. Va. 1990)(finding no constitutional violation where prison staff negligently opened inmate's legal mail outside inmate's presence); *Bruscino v. Carlson*, 654 F.Supp. 609, 618 (S.D.Ill. 1987), aff'd, 854 F.2d 162 (7th Cir. 1988)(finding that "isolated incidents of interference with legal mail" may not

13

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 1), **DISMISS** Plaintiff's Complaints (Document Nos. 3 and 13) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d

---

state a constitutional violation without a showing of "a systematic pattern or practice of interference"); *Hendrix v. Faulkner*, 525 F.Supp. 435 (N.D.Ind. 1981)(finding no constitutional violation where the inmate's mail was opened outside his presence due to negligence and there was no evidence of a pattern or practice of opening or interfering with the delivery of legal mail). In the instant case, there is no allegation or indication that the FCI McDowell employee intentionally opened Plaintiff's legal mail or that prison staff have a custom or practice of opening legal mail outside the presence of inmates. Furthermore, there is no allegation or indication that the opening of the one piece of legal mail denied Plaintiff access to the court or interfered with the ability to prosecute a case.

91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff at his current address of USP Leavenworth, P.O. Box 1000, Leavenworth, KS.

Date: July 31, 2018.

_____
Omar J. Aboulhosn
United States Magistrate Judge